UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HOME POINT FINANCIAL
CORPORATION,

       Plaintiff,        **MEMORANDUM & ORDER**
                      19-CV-5946 (PKC) (CLP)
   - against -

BLISS HOME FUNDING CORP.; MARIAH
GROSSMAN; BRENT J. KAUFMAN; LAW
FIRM OF OMAR CHAUDHRY, PLLC; and
MUHAMMAD OMAR QAYYUM
CHAUDHRY,

       Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Home Point Financial Corporation ("Home Point") brings this action against Bliss

Home Funding Corp. ("Bliss"), Mariah Grossman, Brent J. Kaufman, Law Firm of Omar

Chaudhry, PLLC (the "Law Firm"), and Muhammad Omar Qayyum Chaudhry, asserting breach

of contract, negligence, negligent misrepresentations, breach of fiduciary duty, tortious

interference with contractual relations, conversion, and other state law claims. (*See generally*

Complaint ("Compl."), Dkt. 1.)  Defendants Bliss and Grossman (collectively, the "Bliss

Defendants") now move to dismiss Plaintiff's claims against them.  For the reasons stated below,

the Court denies the motion.

1

**BACKGROUND**

I.      **Relevant Facts[1]**

Plaintiff "is in the business of underwriting, funding and servicing residential mortgage

loans including in the State of New York." (Compl., Dkt. 1, ¶ 9.)  Defendant Bliss "is a mortgage

broker [] in the business of originating residential mortgage loans and has originated residential

mortgage loans" for Plaintiff.  (*Id.* ¶ 10.)  Grossman is the owner and president of Bliss.  (*Id.* ¶ 18.)

During the process for becoming an approved broker for Home Point, Bliss provided Plaintiff with

"a copy of its Anti-Money Laundering Policy, its Quality Control Plan and its Identity Theft

Prevention Program."  (*Id.* ¶ 12.)  Bliss assured Plaintiff that its policy was to review "legal and

closing documents" to confirm that Home Point's closing instructions were followed.  (*Id.* ¶ 13.)

On August 8, 2018, Plaintiff "entered into [a] Wholesale Mortgage Broker Agreement[]" with

Bliss.  (*Id.* ¶ 15.)  Under the agreement, Bliss was to "provide Home Point with loan application

packages for Home Point to review and decide whether it would accept and fund the loans."  (*Id.*

¶ 19.)  Bliss represented, *inter alia*, that

> [Bliss] possesse[d] the requisite qualifications and staff to originate Loans and
> conduct business pursuant to [the agreement] . . . .
>
>         . . . .
>
>         The Loan Application Packages submitted by [Bliss] to [Home Point] do
> not contain any material or clerical errors, omissions, misrepresentations, untrue
> statements, falsified or incomplete documents or exhibits, misleading explanations,
> negligence, identity theft, fraud, or evidence of illegal activity or similar
> misconduct by [Bliss], its officers, agents and employees, the borrowers, seller,
> realtor, appraiser, title company, settlement/closing agent, home inspector, builder
> or any other party involved in the Loan. . . .
>
>         . . . .

---

[1] The Court assumes the truth of the Complaint's non-conclusory factual allegations.  *See*
*Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

> . . . [Bliss] has made full, truthful and accurate disclosure to [Home Point] of all facts, information and documentation pertaining to its submission of any Loan Application Package and is unaware, does not know or suspect, or have constructive notice of adverse circumstances or issues which could impact the integrity, salability or the ability of the Loans resulting from any Loan Application Package to be securitized by any agency or investor or which may otherwise have any bearing on [Home Point's] decision to accept the Loan Application Package.

(Exhibit ("Ex.") A, Dkt. 1-1, at 3–4.)  Bliss also agreed to indemnify damages and losses

> arising out of or related to (i) [Bliss's] breach of any representation, warranty or covenant set forth in this Agreement; (ii) [Bliss's] failure or omission to perform any obligation set forth in this Agreement; and (iii) any fraud (whether active fraud or fraudulent omission) or misrepresentation found to exist in any Loan or any documents related to the Loan or utilized in any way during the origination process.

(*Id.* at 5.)

> For three of the loans submitted by Bliss and funded by Plaintiff,

> Bliss failed to 1) ensure the integrity of the loans submitted to Home Point for funding, 2) ensure compliance with Home Point's closing instructions after Home Point accepted a loan for funding by failing to ensure that the loan was secured by a first priority lien on the collateral, 3) select a closing agent that would comply with Home Point's closing instructions, and 4) . . . detect the failure to payoff prior mortgage liens as part of its post-closing quality control review.

(Compl., Dkt. 1, ¶ 21.)  In each instance, the loan applicant applied for a mortgage loan to refinance a prior mortgage loan and provided a payoff statement for the prior loan before closing.  (*Id.* ¶¶ 22, 26, 37, 41, 54, 58.)  Bliss selected Defendants Chaudhry and/or the Law Firm to serve as the closing agent for the three loans.  (*Id.* ¶¶ 24, 39, 56.)  Contrary to Plaintiff's closing instructions, the prior mortgage loans "remain[] of record," and Plaintiff's loans occupy only a secondary lien position.  (*Id.* ¶¶ 36, 51, 68.)  Defendant Kaufman, an employee of Bliss and former attorney, was involved in the origination and processing of the three loans.  (*Id.* ¶ 69.)  Prior to his employment with Bliss, Kaufman had pled guilty to filing false claims in bankruptcy proceedings and was disbarred.  (*Id.* ¶¶ 70–71.)  Defendant Kaufman changed the contact information for the prior loans

3

that were to be satisfied by Plaintiff's loans to his own contact information.[2]  (*Id.* ¶ 73.)  Therefore, "Defendants caused or participated in the failure to payoff the prior mortgage loans that were intended to be satisfied with [Plaintiff's] [l]oans."  (*Id.* ¶ 74.)

As required by Paragraph 9 of the agreement, Plaintiff has "provided written notification to Bliss regarding Bliss' breach of the representations and warranties contained in the Broker Agreement for the three loans."  (*Id.* ¶ 77; Ex. A, Dkt. 1-1, at 6.)  "Bliss has not taken any action to cure the impaired priority of" the three loans or repurchase the three loans.  (Compl., Dkt. 1, ¶¶ 78, 80.)

## II.    Procedural History

Plaintiff filed this action on October 22, 2019.  (*See* Compl., Dkt.1.)  On November 18, 2019, the Bliss Defendants filed a pre-motion conference request with respect to their anticipated motion to dismiss Plaintiff's claims.  (Dkt. 13.)  The Court granted the request and held the pre-motion conference on January 14, 2020, during which the Court granted leave to file a motion to dismiss.  (*See* Jan. 14, 2020 Minute Entry.)  The motion to dismiss was fully briefed on March 30, 2020.[3]  (Dkts. 22–26.)

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] The Court reads this allegation to imply that Defendant Kaufman changed the contact information to divert the funds that were supposed to pay the prior mortgages.

[3] On December 13, 2019, Defendants Chaudhry and the Law Firm filed their answer and asserted cross-claims against Defendants Bliss, Grossman, and Kaufman.  (Dkt. 18.)  The Bliss Defendants do not seek to dismiss the cross-claims against them in this motion.  (*See generally* Dkt. 23.)

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y.*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).  At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *Id.* at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

## DISCUSSION

### I.      Breach of Contract

Plaintiff asserts a breach of contract claim against Defendant Bliss.  To establish a breach of contract claim under New York law, a plaintiff must show "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

Defendant Bliss's argument can be boiled down to its disagreement with Plaintiff's allegations on whether Bliss was obligated to ensure the priority of the loans.  (*See* Bliss Br., Dkt. 23, at ECF[4] 1–2 (arguing, in substance, that Bliss did not breach the agreement by failing to ensure that the loans were secured by first priority or that the prior mortgage liens were satisfied with Home Point loan funds, "since it was not Bliss' duty to do [so]").)  For support, Bliss quotes, without providing context, paragraphs from four cases that suggest that closing agents or settlement agents have a fiduciary duty to lenders and are responsible for ensuring compliance with closing instructions.[5]  (*Id.*)  While these cases may support Defendants Chaudhry and the Law Firm's liability, they do not show that a mortgage broker *cannot* also be held liable for a breach of contract claim under the present circumstances.

Plaintiff has alleged, accompanied by supporting documentation, that under the agreement between Plaintiff and Bliss, Bliss made various representations relating to "the integrity, salability

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] Defendant Bliss also recites the language of 12 U.S.C. § 2616, the savings provision in the Real Estate Settlement Procedures Act, which seems to be a non-sequitur.

or the ability of the [three loans] resulting from any Loan Application Package to be securitized by any agency or investor" that were false.  (Compl., Dkt. 1, ¶ 16; Ex. A, Dkt. 1-1, at 4.)  These allegations are sufficient to state a claim for breach of the agreement.  Defendant Bliss does not argue in its brief that Plaintiff failed to state an element of its breach of contract claim, and only makes conclusory denials of its liability.  (*See, e.g.*, Bliss Br., Dkt. 23, at ECF 2 ("Bliss neither failed to comply with the terms and conditions of the brokers agreement and home point's written guidelines nor breached the agreement [t]hrough its actions and inactions.").)  In its reply, Defendant Bliss cites language in the agreement that Bliss was responsible for the origination of the loans, and argues that Plaintiff's Complaint does not allege misconduct in the origination process, but only alleges misconduct during the closing phase.  (Bliss Reply, Dkt. 26, at ECF 1–2.)  However, one does not exclude the other.  The contractual language Defendant Bliss points to does not show, as a matter of law, that Bliss had no contractual obligations during the closing process.  Indeed, Plaintiff alleges that Bliss selected the closing agent and made representations under the agreement about misconduct by the closing agent, and that a Bliss employee caused the prior mortgages to remain on the properties—conduct that Plaintiff alleges violated Paragraph 5 of the agreement.  (Compl., Dkt. 1, ¶¶ 24, 39, 56, 73; Ex. A, Dkt. 1-1, at 4.)  Defendant Bliss's disagreement over its contractual duty and the fulfillment thereof is a factual dispute that the Court will not resolve on a motion to dismiss.  *Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017) (summary order) ("[A] factual dispute . . . could not have been resolved on a motion to dismiss under Rule 12(b)(6)." (citation omitted)); *see also Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559 (ARR), 2017 WL 6501864, at *5 (E.D.N.Y. Dec. 19, 2017) (holding that an argument that "relies on factual disputes [] cannot be resolved on a motion to dismiss").  Accordingly, the Court denies Defendant Bliss's motion to dismiss the breach of contract claim.

## II.   Negligence and Negligent Misrepresentation

Plaintiff asserts negligence and negligent misrepresentation claims against, *inter alia*, the

Bliss Defendants.  "Under New York law, . . . a plaintiff alleging negligence must prove: '(i) a

duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially

caused by that breach.'"  *Niles v. Pan Am Rys., Inc.*, 697 F. App'x 94, 95 (2d Cir. 2017) (summary

order) (citation omitted).  A plaintiff asserting negligent misrepresentation must show

> that (1) the defendant had a duty, as a result of a special relationship, to give correct
> information; (2) the defendant made a false representation that he or she should
> have known was incorrect; (3) the information supplied in the representation was
> known by the defendant to be desired by the plaintiff for a serious purpose; (4) the
> plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on
> it to his or her detriment.

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citation omitted).

Mortgage brokers "ha[ve] a legal duty to [lenders] to act as a reasonable mortgage broker

would have acted under the same or similar circumstances."  *Fed. Deposit Ins. Corp. v. Lamattina*,

910 N.Y.S.2d 762, at *2 (Sup. Ct. 2010).  Here, Plaintiff, as the lender, alleges that it relied on

Bliss, as the mortgage broker, to hire qualified staff and to select the closing agent, and that Bliss's

hiring of Kaufman and selection of the closing agent caused the failure to pay off the prior

mortgages.  (Compl., Dkt. 1, ¶¶ 15–16, 24, 39, 56, 69–76.)  Plaintiff also alleges that Bliss

misrepresented information regarding the integrity of the three loans.  (*Id.* ¶ 103.)  These

allegations adequately state claims for negligence and negligent misrepresentation.

Aside from the inapposite case quotations discussed above, the Bliss Defendants claim that

"Bliss did not owe [Plaintiff] a legal duty to ensure that Home Point[] loan funds were safeguarded

and only used for their intended purpose"; that Bliss "never hired Kaufman"; and that "Bliss

provided truthful and accurate information to [Plaintiff] throughout the loan underwriting,

approval and up to the closing where [Bliss's] duty and ability to control the process stop[ped]."

(Bliss Br., Dkt. 23, at ECF 2–3.)  Again, Defendants' conclusory denials of the facts alleged in the

Complaint cannot defeat Plaintiff's claims at the pleadings stage.  *See Ray*, 708 F. App'x at 722.

Accordingly, the Court denies the Bliss Defendants' motion to dismiss the negligence and

negligent misrepresentation claims.

### III.      Breach of Fiduciary Duty

Plaintiff asserts a claim of breach of fiduciary duty against, *inter alia*, the Bliss Defendants.

"The elements of a breach of fiduciary duty claim under New York law are (1) the existence of a

fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by [the

defendant's] misconduct."  *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) (summary order)

(internal quotation marks and citation omitted).  "[C]onduct that constitutes a breach of contractual

obligations may also constitute a breach of a fiduciary duty arising out of that contract."  *Gortat v.*

*Capala Bros.*, 585 F. Supp. 2d 372, 377 (E.D.N.Y. 2008) (citation omitted), *aff'd*, 568 F. App'x

78 (2d Cir. 2014).  "Such a duty may be independent of a contract and yet emerge from a

relationship of trust and confidence created by a contract, as in the case of a lawyer and client."

*GPIF-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*, No. 13-CV-547 (CM), 2014 WL 1612004, at

*4 (S.D.N.Y. Apr. 21, 2014) (citation omitted).

Here, Plaintiff alleges that

> [b]ecause Bliss provided Home Point with its policies and procedures
> demonstrating Bliss' reliability, expertise, diligence, trustworthiness and capability
> to originate loans and Bliss' commitment to ensure the integrity of loans through to
> the end of the loan closing process, Home Point placed its trust and confidence in
> Bliss to ensure the integrity of loans that Bliss originated and communicate fully
> and truthfully regarding the loans that Bliss originated.

(Compl., Dkt. 1, ¶ 112.)  Hence, Plaintiff has pleaded "trust and confidence in another who . . .

possesses superior expertise on which [Plaintiff] relied."  *Nationwide CATV Auditing Servs., Inc.*

*v. Cablevision Sys. Corp.*, No. 12-CV-3648 (SJF) (ETB), 2013 WL 1911434, at *15 (E.D.N.Y.

May 7, 2013) (citation omitted).  The Bliss Defendants' mere denial that Plaintiff "could not and/or

should not have placed its trust and confidence in [B]liss" (Bliss Br., Dkt. 23, at ECF 4) is again a

factual dispute and does not vitiate the well-pleaded complaint.  Accordingly, the Court denies the

motion to dismiss the breach of fiduciary duty claims.

## IV.    Tortious Interference with a Contractual Relationship

Plaintiff asserts tortious interference with a contractual relationship against, *inter alia*, the

Bliss Defendants.  (Compl., Dkt. 1, ¶¶ 117–25.)  To assert tortious interference with a contractual

relationship, a plaintiff must show "[1] the existence of a valid contract between the plaintiff and

a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement

of the third-party's breach of the contract without justification, [4] actual breach of the contract,

and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d

Cir. 2019).

Plaintiff alleges that Bliss interfered with Plaintiff's contracts with the closing agents

through Bliss's employee, Kaufman, who "used the information obtained as part of the loan

originations and changed the contact information for the mortgage loans that were to be satisfied

by the new Home Point loans to his contact information"—conduct that resulted in the prior

mortgage loans not being paid.  (Compl., Dkt. 1, ¶¶ 73–74.)  Plaintiff has thus stated a tortious

interference claim.   In moving to dismiss this claim, the Bliss Defendants make the same

conclusory factual denials as above, that "Bliss did not provide contrary instructions and procure

breach of closing instructions" and hence did not interfere with Plaintiff's contractual relationship

with the closing agents.  (Bliss Br., Dkt. 23, at ECF 4.)  Bliss also claims that Plaintiff and the

closing agents, not Bliss, were solely responsible for ensuring the proper distribution of the funds.

(*See* Bliss Reply, Dkt. 26, at ECF 3.)  As discussed above, these are factual disputes that the Court

will not resolve at the pleadings stage and are not a proper basis for dismissal of the Complaint.

*See Ray*, 708 F. App'x at 722.  Defendants do not offer any legal arguments as to why Plaintiff has

failed to state a tortious interference claim.  Accordingly, the Court denies the motion to dismiss

the tortious interference claim.

## V.      Conversion

Plaintiff asserts a claim of conversion against, *inter alia*, the Bliss Defendants.  "Under

New York law, [a] conversion takes place when someone, intentionally and without authority,

assumes or exercises control over personal property belonging to someone else, interfering with

that person's right of possession."  *Grgurev v. Licul*, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017)

(internal quotation marks and citation omitted).

Plaintiff alleges that its loan funds were not applied to the prior mortgage loans, as required

by Plaintiff's closing instructions, and that Defendants are in possession of those funds.  (Compl.,

Dkt. 1, ¶¶ 129–31.)  These allegations sufficiently state a claim of conversion.  In moving to

dismiss this claim, the Bliss Defendants again dispute the factual allegations, asserting that "Home

Point wired loan funds to [Chaudhry] and [Chaudhry] law to be disbursed as directed by the closing

instruction and closing disclosures[,] and [Chaudhry] and [Chaudhry] law received the loan

funds," thereby implying that the Bliss Defendants are not in possession of the funds.  (Bliss Br.,

Dkt. 23, at ECF 5.)  As discussed, such factual disputes do not support dismissal of the Complaint.

Accordingly, the Court denies the motion to dismiss the conversion claim.

## CONCLUSION

For the reasons stated above, the Court denies Defendants Bliss and Grossman's motion to

dismiss.  Plaintiff's claims will proceed to discovery.

SO ORDERED.


/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  June 16, 2020
        Brooklyn, New York